**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America | : |
| | : |
| v. | :    Case No. 1:23-cr-00267 (APM) |
| | : |
| Adam Obest, | : |
| *Defendant.* | : |

**DEFENDANT ADAM OBEST'S**
**MOTION TO SUPPRESS STATEMENTS**

COMES NOW the Defendant, Adam Obest, through counsel, and respectfully moves this Court to suppress custodial statements that he made after invoking his Constitutional right to counsel and silence.  In support of this Motion, Mr. Obest states the following:

**Relevant Background**

On June 13, 2023, federal agents arrested Mr. Obest at his place of employment in Maryland.  While in custody, Mr. Obest told agents that he was represented by counsel.  Agents called counsel, with Mr. Obest present, to confirm that Mr. Obest was represented and to confirm that he did not wish to make a statement.  Mr. Obest's Fifth Amendment right to remain silent was expressly invoked.

While remaining in custody, Agents then placed Mr. Obest in their vehicle to transport him to the United States Marshal's Service (USMS) in Washington, DC.  During the drive, agents reminded Mr. Obest that he had invoked his right to counsel.  Nonetheless, agents proceeded to show Mr. Obest two Metropolitan Police Department (MPD) body worn camera (BWC) videos from January 6, 2021.  These BWC videos allegedly depicted Mr. Obest related to the charged conduct.

After seeing the videos, Mr. Obest made statements to the agents, including that "he

became upset when the officer grabbed his (Obest's) flag ...."  Additional conversation followed between agents and Mr. Obest.  Mr. Obest moves this Court to suppress these statements and any other statements he made while he was in custody and subjected to interrogation.

## **Argument**

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court concluded that procedural safeguards are necessary to protect a defendant's Fifth Amendment privilege against self-incrimination:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.

A person is in custody when he is "deprived of his freedom of action in any significant way." *Id*.  "[E]xpress questioning" that "the police should know [is] likely to elicit an incriminating response" is interrogation for *Miranda* analysis.  *Rhode Island v. Innis*, 446 U.S. 291, 298 (1980).

*Miranda's* protections are not narrowly cabined to express questioning; rather, the "concern of the Court in Miranda was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination."  *Id.* at 299 (quoting *Miranda*, 384 U.S. at 457-58).  Whether a question is reasonably likely to elicit an incriminating response is an inquiry that "focuses primarily upon the perceptions of the suspect, rather than the intent of the police."  *Id*. at 301-02.

Applying this analysis here, agents placed Mr. Obest in custody upon his arrest at his place of employment.  At no relevant point was he released or otherwise not in custody for

*Miranda* purposes.  Before agents questioned Mr. Obest, he clearly and unequivocally invoked his right to remain silent and not make any statements.

While in custody in the back of federal agents' vehicle—and removed from the advice and counsel of his attorney—agents proceeded to show Mr. Obest BWC videos from the events of January 6, 2021.  While in this custodial and coercive environment, there could have been no other purpose for agents to show these videos to Mr. Obest other than to elicit an incriminating response.  This interrogation environment undermined Mr. Obest's privilege against self-incrimination, and he made statements in reply.

These were neither spontaneous nor routine booking statements.  They were coerced statements that Mr. Obest offered in response to law enforcement's intentional interrogation methods.  The agents' actions were the "functional equivalent" of express questioning following Mr. Obest's express invocation of his right to remain silent.  *See Innis*, 446 U.S. at 301.

## Conclusion

In short, nearly two-and-a-half years after the events of January 6, 2021, federal agents arrested Mr. Obest without warning.  Agents told him that he was criminally charged related to his alleged actions on January 6.  After invoking his right to counsel and silence, agents transported Mr. Obest from his employment in Maryland.  While in custody and driving to USMS in Washington, DC, agents showed Mr. Obest videos related to his alleged actions on January 6, 2021.  The sole purpose of showing Mr. Obest these videos was to overcome his invocation of counsel and silence.  Mr. Obest's statements in reply and any evidence derived therefrom, if any, should be suppressed.

Date: May 13, 2024                                          Respectfully submitted,

Adam Obest
By Counsel

/s/ *Samuel C. Moore*
Samuel C. Moore
Law Office of Moore, Christoff & Siddiqui, PLLC
526 King Street, Suite 506
Alexandria, Virginia 22314
Phone: (703) 535-7809
Fax: (571) 223-5234
scmoore@moorechristoff.com
*Counsel for Adam Obest*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant's Motion to Suppress Statements was served

upon counsel of record through ECF on the date of filing.

/s/ *Samuel C. Moore*
Samuel C. Moore
Law Office of Moore, Christoff & Siddiqui, PLLC
526 King Street, Suite 506
Alexandria, Virginia 22314
Phone: (703) 535-7809
Fax: (571) 223-5234
scmoore@moorechristoff.com
*Counsel for Adam Obest*