UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:23-CR-00267 (APM) |
| | : | |
| ADAM OBEST | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPRESS STATEMENTS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its response to defendant Adam Obest's Motion to Suppress Statements ("Defendant's Motion"). ECF No. 33. Defendant's Motion argues that certain statements made by the defendant after his arrest were obtained in violation of his Fifth Amendment rights and *Miranda v. Arizona*, and therefore should be suppressed. In response, the United States asserts that it does not intend to use those statements in its case in chief, but preserves the right to use the statements for impeachment purposes.

### FACTUAL BACKGROUND

On January 6, 2021, the defendant, Adam Obest, went to the United States Capitol building after attending President Trump's "Stop the Steal" rally in Washington, D.C. Footage from January 6 depicts the defendant at the rally, as well as on the Lower West Terrace of the Capitol building, within restricted Capitol grounds. In that footage, the defendant can be seen holding a large American flag affixed to a metal flagpole.

At approximately 2:31 p.m., the defendant engaged in a verbal and physical confrontation with officers on the Lower West Terrace of the building. During that confrontation, the defendant struck and/or attempted to strike an officer with the flag that he carried with him. Approximately

1

a minute later, at about 2:32 p.m., the defendant again attempted to and/or did strike an officer, this time with the metal flagpole. The defendant then reached for and grabbed onto an officer's baton.

The defendant was arrested on June 13, 2023 for his involvement in the events of January 6, 2021 and was taken to the FBI's Baltimore office. The arresting agents called the defendant's counsel, who invoked the defendant's Fifth Amendment right to remain silent.

FBI agents then transported the defendant from the FBI's Baltimore office to the United States Marshal's Service in Washington, D.C. During that transport, an FBI Special Agent reiterated to the defendant that, per his lawyer's instructions, he should not provide any substantive information or comment regarding his case. The agent then told the defendant that he would show him video footage depicting the crimes with which he was charged, and proceeded to show the defendant two clips of Metropolitan Police Department body worn camera footage from January 6, 2021. While reviewing the first clip, the defendant commented that he became upset when the officer grabbed his flag, for/with which he had been deployed overseas. In response, the agent again reiterated to the defendant that he should not discuss what happened on January 6, 2021. The defendant, in turn, stated that he wanted to talk about it. The defendant added that he is not a big supporter of the former President, but that his wife is. He also again stated that he merely got upset because the officer tried to take his flag.

## LEGAL STANDARD

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. To safeguard that right, law enforcement must inform a suspect who is going to be questioned while in custody that he has certain rights, including the right to remain silent and the right to an attorney. *Miranda v. Arizona*,

384 U.S. 436, 479 (1966). A waiver of a defendant's Fifth Amendment rights under *Miranda* must be both intelligent and voluntary. *Id*. at 461-62, 468-72.

Voluntary statements made to law enforcement are available to the government for impeachment purposes, even when those statements are otherwise inadmissible due to a violation of a defendant's *Miranda* rights. *Oregon v. Hass*, 420 U.S. 714, 722-23 (1975); *Harris v. New York*, 401 U.S. 222, 224-26 (1971) (reasoning that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of defense, free from risk of confrontation with prior inconsistent statements"). This is true even when a defendant initially states that he does not want to speak with authorities following his arrest. *See, e.g.*, *United States v. Murdock*, 667 F. 3d 1302 (D.C. Cir. 2012) (that the defendant twice said "no" when asked if he wanted to speak with authorities was sufficient to establish a *Miranda* violation but was insufficient to suppress the statements for impeachment purposes).

Where the government indicates that it does not intend to use statements made by the defendant during its case in chief, the only question for the Court is therefore whether the statements were made by the defendant voluntarily. *See United States v. Avitan*, 349 F. Supp. 3d 23, 25 (D.D.C. 2018). A defendant's statement is involuntary, and therefore inadmissible for any purpose, if "the defendant's will was overborne when he gave his statement." *Murdock*, 667 F. 3d at 1305 (internal quotation omitted). Involuntariness is a high bar, such that "egregious facts" are "necessary to establish that statements…made during questioning were involuntary." *United States v. Mohammed*, 693 F.3d 192 (D.C. Cir. 2012) (possibility that defendant had been handcuffed and mislead by authorities during questioning was not egregious enough to render statements he made involuntary). Therefore, "[s]tatements made where the circumstances are less than 'egregious' are usually voluntary." *United States v. Roberson*, 573 F. Supp. 3d 209, 218

3

(D.D.C. 2021) (citing *United States v. Hallford*, 816 F. 3d 850, 863 (D.C. Cir. 2016) (Wilkins, J., dissenting in part and concurring in part)).

**ARGUMENT**

Without conceding that the statements made by the defendant during his post-arrest transport to the United States Marshal's Service were obtained in violation of the defendant's Fifth Amendment rights and should be suppressed, the United States does not intend to use those statements affirmatively during its case in chief. The United States thereby considers the issue moot.[1]

In any event, the defendant's statements to the authorities after his arrest were voluntary and the government should therefore be permitted to use the statements for impeachment purposes at trial. The defendant's conclusory assertion that the statements were "coerced" has no merit. ECF No. 33 at 3. At the time of his arrest, the defendant was a 42-year-old Army veteran with a Bachelor's degree who held a stable job at the Centers for Medicaid and Medicare Services. He was thus fully capable of understanding the gravity of the situation and the agent's and his attorney's instructions. Nor is there any evidence that the circumstances of the car ride from Baltimore to Washington, D.C. (lasting just over an hour) were egregious enough to overcome the defendant's will.

In reality, when the agents showed the defendant video footage from January 6, the defendant was apprised of the nature of the alleged violations of criminal law. The agents who spoke with the defendant in the car did not ask the defendant any explicit questions. In fact, the agents clearly and repeatedly advised the defendant *not* to comment on his activities on January 6,

---

[1] To the extent the defendant alleges that the government obtained the statements in violation of the defendant's Sixth Amendment rights, which he does not expressly do in his motion, the government would be prepared to challenge that assertion.

2021. Regardless of his mental or emotional state, the defendant responded through his own volition – explicitly telling the agents that he wanted to talk. As previously explained by the U.S. Supreme Court in the seminal voluntariness case of *Colorado v. Connelly*:

> The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion. *See United States v. Washington,* 431 U.S. 181, 187, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977); *Miranda, supra,* 384 U.S., at 460, 86 S.Ct., at 1620. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." *Oregon v. Elstad,* 470 U.S. 298, 305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. See *Moran v. Burbine,* 475 U.S., at 421, 106 S.Ct., at 1141 ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.... [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements"); *Fare v. Michael C.,* 442 U.S. 707, 726–727, 99 S.Ct. 2560, 2572–2573, 61 L.Ed.2d 197 (1979) (The defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit.... The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in *Miranda*").

479 U.S. 157, 170 (1986).

Here, the defendant has proffered nothing to suggest that law enforcement's engagement with him was improper or overbearing. Even in custody, showing a person the evidence of their crimes is neither trickery nor deceitful. Unlike in *Blackburn v. Alabama*, 361 U.S. 199 (1960) or *Townsend v. Sain*, 372 U.S. 293 (1963), law enforcement did not exploit a defendant's mental state, drug the defendant, or prolong a sustained interrogation. The defendant's interaction – however emotionally taxing on him personally – was entirely standard, and thus, his statements can be lawfully used to the extent he testifies.

## CONCLUSION

The government states in response to the Defendant's Motion, ECF No. 33, that it does not intend to use the statements made by the defendant after his arrest in its case in chief. Nonetheless,

5

for the foregoing reasons, the government should be permitted to introduce evidence of those statements for impeachment purposes at trial.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar No. 481052

                                                */s/ Sonia Murphy*
                                                SONIA MURPHY
                                                Assistant United States Attorney
                                                District of Columbia Bar No. 483072
                                                601 D Street NW
                                                Washington, D.C. 20530
                                                (202) 305-3067
                                                Sonia.murphy@usdoj.gov

                                                */s/ Rachel Freeh*
                                                RACHEL FREEH
                                                Assistant United States Attorney
                                                District of Columbia Bar No. 1736082
                                                601 D Street NW
                                                Washington, D.C. 20530
                                                (202) 252-7749
                                                Rachel.freeh@usdoj.gov