<u>**United States v. Obest (23-cr-267)**</u>
<u>**Oral Ruling**</u>

**Background**

The government has accused Defendant Adam Obest of various offenses relating to the events of January 6, 2021, at the United States Capitol Building.

Mr. Obest is charged with eight counts: (1) Count One for obstructing officers during a civil disorder; (2) Counts Two and Three for assaulting, resisting, or impeding officers; Count Two relates to MPD Officer Gavin Nelson  and Count Three relates to MPD Officer Jonathan Chen; (3) Count Four for assaulting, resisting, or impeding officers with a deadly or dangerous weapon (no specific officer); (4) Count Five for entering and remaining in a restricted building or grounds with a deadly or dangerous weapon; (5) Count Six for disorderly conduct in a restricted building or grounds with a deadly or dangerous weapon; and (6) Count Seven for engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon; and (7) Count Eight for an act of physical violence in a Capitol grounds or building.

The indictment specifies a flagpole as the deadly or dangerous weapon used by Defendant.

**Findings of Fact**

The court makes the following findings of fact.

<u>Preliminary findings</u>

USCP Inspector Carneysha Mendoza testified that U.S. Capitol Police had established a security perimeter for the certification of the Electoral College vote prior to January 6th and on the day itself.  See Gov't Exs. 210; 706 (Stipulation).  According to Inspector Mendoza, the security perimeter was visible and established with bike racks, snow fencing, black fencing, and "Area Closed" signs affixed to the racks and fencing, as well as the physical presence of police personnel. In total, there were five layers of fencing and other barriers.  This fact was confirmed by multiple exhibits.  Gov't Exs. 209, 211, 212.  The court credits the testimony that a security perimeter consistent with Government Exhibit 210 was established on January 6.

Inspector Mendoza further testified that the Vice President would be visiting the Capitol that day to preside over the scheduled Joint Session of Congress.  Gov't Ex. 706.  And he was in fact there.

Inspector Mendoza also testified that in the afternoon of January 6, she received a call that officers were in trouble, and she arrived at the east front of the Capitol at 2:15 p.m.  She saw large crowds surrounding the Capitol building and people on the steps of the east front.  Eventually, she learned that there had been a security breach on the west side of the Capitol.  Inspector Mendoza testified that the West Terrace Plaza was initially breached around 1:00 p.m.  At 1:13 p.m., a squad of MPD

officers arrive at the south end of the LWT, where they were able to successfully re-establish a police line, which included bike racks.  Gov't Ex. 200.

The breach of the Capitol building and grounds lasted for around eight hours, and the Certification proceedings were halted until sometime later that night and concluded around 3:30 a.m. the next morning.

<u>Obest Pre-Capitol Breach</u>

Prior to January 6, Facebook and audio message evidence established that Mr. Obest was knowledgeable about the November 2020 election and the controversy surrounding it.  He posted a message on January 2, 2021, stating that it was "time to rise up and fight" and that he would "be prepared to see it if so."  Gov't Ex. 400.1.  On January 5, 2021, Mr. Obest commented "[t]ime to fight" in response to a video of President Trump.  Gov't Ex. 400.2.  On January 6, 2021, shortly after midnight, he also sent a private audio message to a friend, stating "I decided on carrying in my vehicle, and knowing if I needed it, I would have access . . . but I would need to plan it as an operation, as a field exercise . . . I realize that's not good, and I'm not prepared to do that with my wife with me.  So I chose against bringing it . . . DC police have already posted no firearms within a First Amendment rally . . .  It's very clear what must happen, if there were going to be actions that were beyond normal, just protesting . . . President's not gonna concede . . . *If Pence does his thing, we'll be good.*"  Gov't Ex. 400.21A–B.

Evidence presented a trial did not establish when Defendant left his home in Maryland to attend the January 6 rally in Washington, D.C.  The parties did stipulate, however, that Defendant was present at Capitol grounds on January 6.  Gov't Ex. 700.  Video evidence placed Mr. Obest on the Capitol grounds beginning at 2:22 p.m.  Gov't Ex. 506.1.  The parties stipulated that he wore a black jacket and camouflage baseball cap, and he carried an American flag on a white pole.  Gov't Ex. 700.  The flagpole was approximately five feet tall, based on its proportions compared to Mr. Obest's height.  Gov't Ex. 700.

<u>Former President Trump's Speech</u>

Mr. Obest and his wife were on the National Mall to watch then-President Trump's rally speech. Video evidence places him in the crowd at the time that Trump encouraged then-Vice President Pence to return votes to the States for recertification.  See Gov't Exs. 600, 604.

<u>Initial Conduct on the Lower West Terrace</u>

Defendant reached the police line at the south end of the LWT by 2:22 p.m.  Gov't Ex. 506.1 at 5:45.  At that time, the police line was established at the top of a set of 3-4 stairs leading up to the LWT.  Gov't Exs. 200, 506.1.  Officer Lynn, who testified at trial, yelled repeatedly at Mr. Obest "stay back there, do not come up here."  Gov't Ex. 506.1 at 5:58–6:10.  He did not comply, approaching twice after the first order.  When he approached, he appears to look beyond Officer

Lynn, behind the police line.  After the third push, Mr. Obest remained for a few seconds at the bottom of the stairs.  Officer Lynn ordered him to put the pole down and directed pepper spray towards him.  *Id.* at 6:03–6:10.  Mr. Obest's wife, wrapped in a Trump 2020 flag, retreated from the line.  *Id.* at 6:10–6:15.  Officer Lynn continued to tell Mr. Obest and others "do not come up here" and "You're gonna stay down there."  *Id.* at 6:24.  Mr. Obest ignored her and approached yet again with his flagpole.  *Id.* at 6:20–7:00.  He can be heard on BWC saying to the officers, "you guys have a job, our job is for freedom, and you know it."  *Id.*  After that, he was shoved back once more and then pointed to the line of officers, including Officer Lynn.  He then disappeared into the crowd.  Mr. Obest testified at trial and admitted that he did not immediately get back as directed by the officers.

At 2:24 pm, BWC footage captures Mr. Obest initially with his back to the police line, next to his wife, in a seemingly rather animated conversation with her and one other person.  Gov't Ex. 504.

<u>Breakdown of the Line</u>

At approximately 2:28 p.m., the police line on the south side of the LWT, where Officer Lynn and her colleagues were stationed, completely collapsed, allowing rioters to surge forward onto the LWT.  Gov't Ex. 100, 608.  Mr. Obest was among those rioters.

Just before 2:29 p.m., BWC captures Mr. Obest with his flag raised among the mayhem on the south end of the LWT.  Gov't Ex. 507.1 at 5:52.  The same BWC shows Mr. Obest bringing his flag down in a sweeping motion.  *Id.* at 6:03.  He appears to be aiming the flag at a police officer, but the BWC does not capture the target precisely.  CCTV captures these exact same moments.  It shows that at 2:29:10 p.m., Mr. Obest is beyond the police line where he was originally stopped by Officer Lynn and told to get back.  He is well into the Lower West Terrace.  The video depicts him holding his flag in front of him in the scrum of people and police.  Gov't Ex. 907 at 1:12.  He appears to get hit in the eye with pepper spray, causing him to duck down for a moment.  *Id.* at 1:15.  But then he stands back up, reaches out his right arm, and swings his flag downwards in the direction of an officer, who has their back to him,  and appears to scrape the officer's helmet with the flag.  *Id.* at 1:20–1:23.  Shortly after, he ends up face-to-face with an MPD officer.  *Id.* at 1:55.  CCTV footage shows him holding his flagpole across his body as he engages with the officer, appears to make physical contact with him, and moves him backwards.

Just before 2:31 p.m., BWC captures Mr. Obest immediately behind a first line of rioters up against a police line, yelling directly at an officer whose body cam is recording.  It is difficult to discern what he is saying, though at one point I could make out that he said, "this is our country."  Gov't Ex. 508.1 at 6:00–6:04.  Whatever else he said, he was acting in an aggressive manner.

About 40 seconds later (2:31:36 pm), on different BWC (Gov't Ex. 502.1), Mr. Obest can be seen thrusting his body towards the police line.  He has his flag in his right hand and can be seen extending his right arm and shoving an officer.

Less than 10 seconds after that, at 2:31:44 p.m., other BWC shows Mr. Obest still positioned at the front of a police line near the scaffolding on the south end of the LWT. Gov't Ex. 500 at 1:12:06. Again, he was well onto the LWT at this location. The BWC shows Lieutenant Nelson grabbing the flag-end of Mr. Obest's flagpole, which Mr. Obest has angled towards the police line, and Lt. Nelson tussling with Mr. Obest over the flagpole. Mr. Obest can be heard yelling, "that's a flag." Mr. Obest then successfully pulls the flag away from Lt. Nelson and backs up. *Id.* at 1:12:06–1:12:09. Scuffles were breaking out to the left and right of Lt. Nelson at that time. Lt. Nelson testified that he remembered his encounter with Mr. Obest because he recalled those incidents on January 6 when individuals used objects to strike him. Mr. Obest denied that his flag hit any officer. He testified that the flag meant a lot to him as a military veteran.

About 30 seconds later (2:32:03 pm), a different BWC shows Mr. Obest confronting likely the same line of police. The video captures him raising his right arm, the flagpole in his right hand, and making a jabbing motion with the bottom end of the flagpole towards the line of officers. Gov't Ex. 503.1 at 9:03–9:04; *see also* Gov't Ex. 902. The flagpole does not appear to hit anyone. He then retracts the flagpole, puts two hands on it, raises the flagpole above his head, and brings it down in a sweeping motion towards the police line. Gov. Ex. 503.1 at 9:05. An officer is able to grab hold of the pole as Mr. Obest swings it downward. Mr. Obest succeeds in pulling the flagpole back from the officer, and he then grabs that same officer's baton with his left hand. Continuing to hold the flagpole back in his right hand, Mr. Obest wrestles with the officer over the baton, and says "fight with it" at least three times. *Id.* at 9:11–9:15. The court carefully listened to the video and confirms that is what Mr. Obest said while holding onto the officer's baton. Mr. Obest testified that he could not recall these incidents, but he did not intend to hurt anyone.

I repeatedly watched this particular sequence of events. What I find occurred is that Mr. Obest did jab the bottom of the flagpole towards the police line—it is not clear at precisely whom—and while retracting the pole, a gloved hand attempts to grab the flagpole and makes contact with Mr. Obest's arm and hand. I have looked very carefully at whose arm that is, and it is not an officer's. It is of a rioter wearing sunglasses and black mitten. But because Mr. Obest has taken ahold of the flag with both hands, that rioter is unable to stop Mr. Obest from swinging the flagpole forward. Once the flag is extended at the bottom of the swing, an officer, who turns out to be Officer Chen, is able to catch the flagpole with his left hand, while holding a baton in his right. Officer Chen has some success pulling the pole back towards him as Mr. Obest tries to pull it away. Ultimately Mr. Obest is able to wrest it back. At that same moment, with the flag secured in his right hand, Mr. Obest reaches around a person who is directly in front of him and with his left hand, grabs Officer Chen's baton. Mr. Obest is able to hold onto the baton for about four seconds. Mr. Obest can be heard saying while holding onto the baton, "fight with it, fight with it." Officer Chen at the same time is saying, "back up, back up."

At 2:35 p.m., video evidence shows that Mr. Obest is still on the Lower West Terrace. It is important to understand precisely where he is at this point (and had been since 2:29 p.m.). 3D images of the Capitol (Gov't Exs. 206 and 208) show that on the LWT just to the north of the scaffolding there is a semi-circular step up to a landing that backs into a wall. By that time, any

4

semblance of a police line had broken.  At 2:35 p.m., rioters started to step onto that landing and backed police into the wall.  Mr. Obest is no more than 10 to 15 feet from that stepped-up landing.  Gov't Ex. 907 at 8:00-8:05.  At 2:35 p.m. and 50 seconds, CCTV footage shows him walking away from that landing when a smoke grenade lands at his feet.  He proceeds to pick it up and throw it in the direction of the Capitol.  And then he quickly departs.  Mr. Obest testified that he did not know at the time in what direction he was throwing the smoke bomb.

Mayor Bowser ordered a curfew at 2:31 p.m. that afternoon.  Evidence showed that Safeway stores closed at 4 p.m. in anticipation of the curfew.  Sales were lower at all stores on January 6, 2021, vs. January 5, 2020.

***

Afterwards, Mr. Obest posted a number of messages and sent audio messages on Facebook.  In one, he recorded a message saying "they outmaneuvered us, they took down barriers and messed with security before Trump people got there.  Most of us thought we were going to the Capitol.  Police were pushing back people and *we didn't like that so we resisted*."  Gov't Ex. 38.

## Count 1: Obstructing Officers During a Civil Disorder

Counts 1 of the Indictment charges Mr. Obest with obstructing officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).

In order to find Defendant guilty of these offenses, I must find that the government proved each of the following elements beyond a reasonable doubt.

*First*, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with law enforcement officers.

*Second*, at the time of the defendant's actual or attempted act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

*Third*, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

The parties stipulated that, on January 6, USCP and MPD officers on the Capitol grounds were engaged in their official duties as officers.  So, there is no dispute as to the second element.

- Element 3: Evidence showed that there was a civil disorder at the Capitol on January 6, and that it affected commerce (Safeway, also stipulated to) and federally protected functions (Capitol Police and Secret Service, same)

- **Element 1**: The question then is whether Mr. Obest knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with law enforcement officers.

  - Mr. Obest was not a mere bystander on Capitol grounds on January 6.  He was on the LWT for about a 14-minute period, during which he was at the center of multiple confrontations with police officers.
  - Soon after the line broke on the south side of the LWT at 2:28 p.m., Mr. Obest surged forward with the crowd onto the LWT.  While he is there, he commits multiple acts with the intent to obstruct, impede, or interfere with officers performing their duties:
    - At 2:29 p.m, while in the midst of a throng of rioters and police officers, Mr. Obest swung his flagpole in the direction of a police officer, and flag appears to graze the back of head of the officer, who is looking in the other direction.  Mr. Obest then came face to face with another officer, and although the court does not know what he said, the video clearly shows him impeding the officer's progress, as they are standing chest to chest, with Mr. Obest holding his flagpole parallel to the ground across his chest. Mr. Obest causes the officer to move backwards.
    - At 2:31 p.m., Mr. Obest can be seen yelling at officers as they are trying to hold the line.
    - About 40 seconds later, he emerged from the line and thrusted his body forward, extending his right arm and shoving an officer.
    - About 10 seconds later, he has his confrontation with Lt. Nelson, during which they have brief tug-of-war over his flagpole.
    - About 30 seconds after that, he jabbed the lower part of the flagpole forward towards the police line, and then grabbed it with two hands and swung it in the same direction.  Officer Chen was able to grab the flagpole.
    - Mr. Obest wrested the flagpole back from Officer Chen, and at the same time reached around another rioter and grabbed Officer Chen's baton with his left hand, making contact with Officer Chen's hand, holding onto the baton for four seconds, and yelling "fight with it, fight with it."
    - Finally, he picked up and threw a smoke grenade towards officers.  I do not credit Mr. Obest's testimony that he did not know the direction in which he was throwing it.  He had been on the LWT for at least 14 minutes by that point, and would have been well aware of the direction of the Capitol and where the police were located.  It is also notable that immediately after he threw the smoke bomb, he quickly moved away from the Capitol and the police.
    - All of these acts taken together, easily satisfy the first element that Mr. Obest knowingly committed acts with the intent to obstruct, impede, or interfere with officers.  That conclusion is reinforced by Mr. Obest's post-

January 6 audio message that, "Police were pushing back people and we didn't like that so we resisted."

- ▪ Mr. Obest testified that he did not intend to hurt anyone.  Perhaps, but the evidence clearly shows that he did intend to impede the efforts of law enforcement to control and disperse the crowd, and in fact did so.

I therefore find Mr. Obest guilty of Count 1.

**Counts 2 & 3: Assaulting, Resisting, Or Impeding Officers**

Counts 2 and 3 of the Indictment charge Mr. Obest with assaulting, resisting, or impeding officers in violation of 18 U.S.C. § 111(a)(1).  Officer Nelson is the specified victim in Count Two, and Officer Chen is the specified victim in Count Three.

To find the defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt.

*First*, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer or officers from the MPD.

*Second*, the defendant acted forcibly, that is, "attempted to use force, or threatened to use force against the officer."

*Third*, the defendant did such acts voluntarily and intentionally.

*Fourth*, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his or her official duties.

*Fifth*, defendant made physical contact with Lt. Nelson (Count Two) and Officer Chen (Count Three), or acted with the intent to commit another felony.  The "felony" refers to the offense charged in Count One.

Count 2.  Encounter with Officer Nelson.

- Element 1: The evidence does not sufficiently establish that Mr. Obest resisted, opposed, impeded, intimidated, or interfered with Lt. Nelson.  The video evidence captures Lt. Nelson grabbing the flag-end of Mr. Obest's flagpole and tussling with Mr. Obest over the flagpole.  Mr. Obest successfully pulls the flagpole away from Lt. Nelson and then backs up.  The footage does not show the beginning of this interaction.  It does not, for example, show that Mr. Obest swings the flagpole at Lt. Nelson.  Mr. Obest's statement — "that's a flag" — does not indicate an intent to intimidate or interfere.  The court acknowledges that Lt. Nelson testified that Mr. Obest assaulted him.  But without corroborating evidence, the court cannot conclude that Element 1 is satisfied beyond a reasonable doubt.

Therefore, I find Mr. Obest not guilty of Count Two.

Count 3.  Officer Chen.

- Element 1: The evidence shows Mr. Obest swinging a flagpole forward and Officer Chen grabbing hold of it.  After Mr. Obest wrested the flagpole away, he reached around another rioter and with his left hand grabbed onto Officer Chen's baton.  He held onto it for about four seconds, making contact with Officer Chen's hand.  While holding onto the baton, Mr. Obest said "fight with it" three times, while at the same time Officer Chen commanded him to "back up, back up."  At this time, Officer Chen is trying to prevent the crowd from moving closer to the Capitol.  At a minimum, Mr. Obest resisted, opposed, impeded, or interfered with Officer Chen.
- Element 2: Acted forcibly.  Officer Chen and Mr. Obest wrestled with the baton until Officer Chen was finally able to pull it away.  Officer Chen had to twist it up and down to shake Mr. Obest's grip.  That shows Mr. Obest acted with the requisite force.
- Element 3: Mr. Obest's acts were voluntary and intentional.  He did not accidentally swing the flagpole down or grab the baton.  He purposefully grabbed it and then held on as Officer Chen tried to wrest it away.  The "fight with it" statements show that he was acting with intention.
- Element 4: Office Chen plainly was engaged in the performance of his duties.
- Element 5: Mr. Obest made physical contact with Officer Chen.  Video evidence shows Mr. Obest grabbing Officer Chen's baton and making contact with his hand.  Also, the evidence establishes that, when interfering with Officer Chen, Mr. Obest acted with the intent to commit another felony: civil disorder.

Therefore, I find him guilty of Count Three.

## Count 4: Assaulting, Resisting, or Impeding Officers with a Deadly or Dangerous Weapon

Count 4 charges Mr. Obest with assaulting, resisting, or impeding any person assisting officers of the United States who are engaged in the performance of their official duties and that Mr. Obest, in the commission of such acts, used a deadly or dangerous weapon in violation of 18 U.S.C. 111(a)(1) and (b).  In order to find the defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt:

*First*, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the MPD.

*Second*, the defendant did such acts forcibly.

*Third*, the defendant did such acts voluntarily and intentionally.

*Fourth*, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties or who was assisting officers of the United States who were then engaged in the performance of their official duties.

*Fifth*, in doing such acts, the defendant intentionally used a deadly or dangerous weapon.

Element 5: I cannot find beyond a reasonable doubt that Mr. Obest used a deadly or dangerous weapon to cause serious bodily injury. The flagpole is not an inherently dangerous weapon, so the question is "was [the flagpole] capable of causing serious bodily injury or death to another person *and* [did] the defendant use[] it in that manner." "Serious bodily injury" in this context means "bodily injury which involves a substantial risk of death; extreme physical pain; medical intervention such as surgery, hospitalization, or physical rehabilitation, protracted and obvious disfigurement; or protected loss or impairment of the function of a bodily member, organ, or mental faculty."

The video evidence does not establish beyond a reasonable doubt that Mr. Obest in fact used the flagpole as a deadly or dangerous weapon. Although Mr. Obest intentionally swung the flagpole and jabbed the bottom end of it towards officers, the videos do not establish that he thrust the flagpole, or swung it, with the kind of force required to cause, at a minimum, "extreme physical pain" had he struck an officer. (To be clear, the court understands there is no requirement that he actually did strike an officer to establish this element.)

As to the lesser included offense, § 111(a)(1), the officer to whom this charge refers to is not specified in the indictment. The government argues that it does not need to specifically identify an officer. That is true is a charging matter, but as a matter of proof the government must prove the act had as its object *some* officer. And having watched the videos repeatedly, the only officer who could be the object of the jab beyond a reasonable doubt is Officer Chen.

There was a person who made contact with Mr. Obest's pole and arm as Mr. Obest pulled the flagpole back after jabbing it forward, but that was not an officer but another rioter.

The other act comprising Count 4 is the swinging of the flagpole forward. When Mr. Obest does that, the BWC footage shows that it was Officer Chen who was on the receiving end, grabbing the pole with his left hand as Mr. Obest swung it forward. Again, having reviewed the videos, the court cannot say beyond a reasonable doubt it was any other officer.

To the extent then that Officer Chen is the victim of the lesser-included § 111(a)(1) offense in Count Four, this count is duplicative of Count 3. In other words, the conduct that satisfies Count 3 is the same as it is for the lesser-included offense for Count 4. The proof

thus established that Counts 3 and 4 are multiplicitous, meaning the two counts charge the same offense and require proof of the same elements. *See United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010). "Upon finding that a defendant has been convicted of two charges for a single offense, the usual remedy is to hold that the convictions have merged and order that one be vacated." *United States v. Clark*, 184 F.3d 858, 872 (D.C. Cir. 1999).

The court finds that Counts 3 and 4 merge and therefore will find Defendant not guilty of Count 4.

## Count 5: Entering and Remaining in a Restricted Building or Grounds with a Dangerous or Deadly Weapon

Count 5 of the Indictment charges Mr. Obest with entering or remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), with a deadly or dangerous weapon, under § (b)(1)(A). In order to find the defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt:

*First*: that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

*Second*: that the defendant did so knowingly.

*Third*: the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

- Element 3 (greater offense): The court already has found that Mr. Obest did not, beyond a reasonable doubt, *use* the flagpole as a deadly or dangerous weapon. The court now also finds that he did not, beyond a reasonable doubt, *carry* the flagpole with the intent to use it in a manner capable of causing serious bodily injury either. Although Mr. Obest used the flagpole in a manner that was aggressive and could have caused some injury, the court cannot conclude that his *intent* was to use it, at any point, to cause serious bodily injury. He unquestionably carried the flagpole with the intent to interfere with officers. But I cannot find he had the intent to use the flagpole to cause serious bodily injury.

- Element 1: Mr. Obest did enter and remain in a restricted building or grounds. As Inspector Mendoza testified, USCP had established a security perimeter. Defendant was well inside that perimeter and did not have authority to be there.

- Element 2: As to whether Mr. Obest knew he was on restricted grounds, Mr. Obest testified that the did not. The evidence convincingly, beyond a reasonable doubt showed otherwise. When Mr. Obest reached the police line around 2:22 p.m., he was positioned at the three or four steps leading up to the LWT. It was at that location that officers repeatedly told him that he could not pass and that he needed to back up.

In fact, Officer Lynn pushed Mr. Obest back three times and deployed OC spray. Mr. Obest therefore knew that he was not permitted on grounds beyond the police line. Yet, the video evidence shows that Mr. Obest did exactly what he was told not to do: progress beyond that police line.  Once the police line was pushed back by the rioters, Mr. Obest joined them and moved forward onto the LWT, well beyond the original police line he encountered, where he (1) swung the flagpole towards an unidentified officer, (2) confronted an unidentified officer with his flagpole held parallel to the ground, (3) engaged in a tug of war with Lt. Nelson over his flagpole, and (4) swung the flagpole towards Officer Chen and grabbed his baton.  He was even closer to the Capitol when he picked up and threw the smoke grenade.  The fact that he was told repeatedly to move away from the police line, when combined with his experience working as military police officer and in federal buildings, establish beyond a reasonable doubt that Mr. Obest knew that he had no lawful authority to be on the LWT.

I therefore find Defendant not guilty of the greater offense under 18 U.S.C. § 1752(b)(1)(A), but guilty of the lesser included offense, § 1752(a)(1).

I note that the court does not believe that the government has to prove beyond a reasonable doubt that Defendant knew the VP or a Secret Service protectee was or would be present to establish the restricted grounds element.  However, if the Circuit disagrees, I find that the government has proven beyond a reasonable doubt that Mr. Obest had the requisite knowledge.  Mr. Obest's own words from his Facebook postings establish his understanding of the electoral process on January 6 and Vice President Pence's role in that process.  In advance of January 6th, he left an audio message for a friend stating, "If Pence does his thing, we'll be good."  In addition, he was present during President Trump's speech, during which the President urged the Vice President to return the votes cast to the states for recertification.  These facts establish beyond a reasonable doubt that Mr. Obest knew that the Vice President would have been visiting the Capitol during the certification proceedings.

**Count 6: Disorderly and Disruptive Conduct**

Count 6 of the Indictment charges Mr. Obest with disorderly or disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2), with a deadly or dangerous weapon, under § (b)(1)(A).  To find Mr. Obest guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt:

*First*: that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

*Second*: that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

*Third*: that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*Fourth*: the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

- Element 4: For the reasons already stated, Mr. Obest did not knowingly use or carry a deadly or dangerous weapons in relation to the offense.
- Element 1: He did, however, engage in disorderly or disruptive conduct on restricted building or grounds. All of the acts that I described in connection with Count 1 and Count 5 establish that his conduct was disorderly and disruptive and on restricted grounds.
- Element 2: He acted knowingly, with the intent to impede or disrupt the orderly conduct of Government business or official functions. The government business or official functions included: (1) the work of the U.S. Capitol Police officers and (2) the work of members of Congress certifying the Electoral College vote. Mr. Obest's intent with respect to the work of the Capitol Police is self-evident. As to members of Congress, Mr. Obest's messages from prior to the rally show that he knew about the ongoing dispute over the 2020 election results. He gathered with tens of thousands of others at the U.S. Capitol at the precise time that Congress had gathered for a Joint Session to certify the Electoral College vote after the President's speech. By his actions, it is evident he intended to impede or disrupt the workings of Congress.
- Element 3: His conduct in fact impeded and disrupted the orderly conduct of Government business or official functions. Those include police functions, Secret Service functions, and the counting of the Electoral College votes.

I therefore find Mr. Obest not guilty of 18 U.S.C. § 1752(b)(1)(A), but guilty of the lesser included offense, § 1752(a)(2).

## Count 7: Engaging in Violence In A Restricted Building Or Grounds With A Deadly Or Dangerous Weapon

Count 7 of the Indictment charges Mr. Obest with engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon in violation of 18 U.S.C. § 1752(a)(4), (b)(1)(A). In order to find the defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt:

*First*: the defendant engaged in an act of physical violence against a person or persons in, or in proximity to, a restricted building or grounds.

*Second*: the defendant did so knowingly.

*Third*: the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

- Element 3:  For the reasons already discussed, Mr. Obest did not knowingly use or carry a deadly or dangerous weapons in relation to the offense.
- Element 1: An "act of physical violence" means "any act involving an assault or other infliction of bodily harm."  Mr. Obest did not inflict any bodily harm, so the question is whether he committed an act of assault.  An assault is defined as "any intentional attempt or threat to inflict injury upon someone else, coupled with an apparent present ability to do so."  Do find beyond a reasonable doubt that Mr. Obest committed an act involving assault when he swung the flagpole in the direction of Officer Chen before Chen was able to grab it.  The fact that, after he unsuccessfully jabbed the flagpole without hitting anyone, he then raised the flagpole above his head with two hands and swung it down with force demonstrates an intent to inflict injury.  His intent may not have risen to the level of intending to inflict death or serious bodily injury, but that act when viewed against all of the behavior that came before it shows Mr. Obest evidently hostile to the police during the relevant time period, and he intended to injure Officer Chen.  All of this, of course, occurred within restricted grounds.
- Element 2: Mr. Obest acted knowingly.  None of his conduct was the result of mistake, accident, or duress.

I therefore find him guilty of only the lesser included offense, 18 U.S.C. § 1752(a)(4).

## Count 8: Act Of Physical Violence At The Capitol Building Or Grounds

Count 8 of the Indictment charges the defendant with an act of physical violence in the Capitol Building or Grounds in violation of 40 U.S.C. § 5104(e)(2)(F).  In order to find the defendant guilty of this offense, I must find that the government  proved each of the following elements beyond a reasonable doubt:

*First*, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

*Second*, the defendant acted willfully and knowingly.

- Element 1: For the reasons stated, Mr. Obest engaged in an act of physical violence, when he swung his flagpole with force towards Officer Chen.
- Element 2: he did act willfully and knowingly.  None of his conduct was the result of mistake, accident, or duress.

I therefore find him guilty of Count 8.

In summary, the court finds Mr. Obest:

- Guilty on Count One, Civil Disorder
- Not guilty on Count Two, Assault, Resisting, or Impeding Lt. Nelson
- Guilty on Count Three, Assault, Resisting, or Impeding Officer Chen
- Not guilty on Count Four, Assault, Resisting, or Impeding Officers with a Deadly or Dangerous Weapon
- Not guilty on Count Five, Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, but guilty of the lesser-included offense of Entering and Remaining in a Restricted Building or Grounds
- Not guilty on Count Six, Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, but guilty of the lesser-included offense of Disorderly or Disruptive Conduct in a Restricted Building or Grounds
- Not guilty on Count Seven, Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, but guilty of the lesser-included offense of Engaging in Physical Violence in a Restricted Building or Grounds
- Guilty of Count Eight, Act of Physical Violence at the Capitol Building or Grounds